STATE OF FLORIDA *ex rel.* RIVERS BUFORD, ATTORNEY GENERAL, *Relator*, v. EARLE E. CARLEY, CLAIMING TO BE MAYOR, AND EDWARD A. HALEY AND WM. N. BARNES, CLAIMING TO BE COMMISSIONERS OF THE TOWN OF BELLEAIR HEIGHTS, *Respondents*.

En Banc.

Opinion Filed April 15, 1925.

1. A statute is presumed to have been duly enacted, unless the legislatve journals show that the mandatory requirements of the Constitution for the enactment of statutes was not complied with in the consideration and passage of the particular bill.

2. The purpose of the provision of the Constitution that "every bill shall be read by its sections * on its final passage" is to inform the legislators and the public of the contents of each bill, and to prevent hasty legislation.

3. Our Constitution does not require that the journals shall show affirmatively that a bill was read "*by sections*" on its

final passage, and if they do not so show, the presumption, in the absence of affirmative evidence to the contrary, would be that it was read *by sections* as required.

4. In passing upon the constitutionality of statutes generally, no matter from what standpoint the assault thereon may be made, it is a well-settled and cardinal rule that nothing but a clear violation of the Constitution will justify the courts in overruling the legislative will; and where there is a reasonable doubt as to the constitutionality of an act it must be resolved in favor of the act, and it should be upheld.

5. Acts of the Legislature duly enrolled and signed by the officers of the two houses and filed in the office of the Secretary of State with the approval of the Governor thereon, are *prima facie* valid and authoritative laws, but the journals of the two houses that enacted them may be resorted to to ascertain whether the mandatory requirements of the Constitution have been complied with by the legislature in their enactment, and if such journals show explicitly, clearly and affirmatively that any essential constitutional requirement has not been complied with, or if they fail to show any essential step in the progress of enactment that the Constitution expressly requires them to show, such for example, as the entry of the yeas and nays upon the final passage of any bill in either house, then such journals would prevail as evidence, and the enrolled bill, as evidence of law, would have to fail.

6. The journals kept by the two houses of the Legislature of their proceedings are public records of which the courts of the State will take judicial notice.

7. Parol evidence is not admissible against the affirmative showing of the journals of the Legislature.

8. In adjudicating matters involving legislative proceedings in enacting statutes, the courts will accept as true the entries relative to such matters as they appear in the journals that are required by the Constitution to be kept by each house; and parol evidence will not be received to contradict such entries.

9. The courts have no substantive power to review and nullify legislative proceedings or enactments; but in adjudicating litigated rights under a statute, the courts may determine whether the legislative journals show that the statute was not duly enacted.

10. The Constitution provides that "every bill" passed by the Legislature "shall be read by its sections" "on its final passage" in each house, but it does not require an entry to be made in the journals that a bill was so read, and the courts will conclusively presume that a bill was read by its sections on its final passage in each house, unless the contrary clearly appears by the journals.

11. The appropriate entries in legislative journals import verity. The courts will not entertain presumptions against the truth of any appropriate legislative journal entries.

12. The burden is upon one asserting that a statute was not legally enacted, to show it by the legislative journals.

13. The Constitution provides that "every bill shall be read by its sections   *   on its final passage," with an exception not material here; and where the legislative journals state that a particular bill was read by its sections on its final passage, such statement in the journals will be taken as true, even though the journal entries as to the hours of convening and adjourning of the particular session of the legislative body at which the bill was passed, show that it was perhaps a physical impossibility for all of the bills passed at the particular session to have been each severally and consecutively read by its sections on its final passage as required by the Constitution, since there was ample time for the bill in controversy to have been read by its sections on its final passage, and other evidence will not be received to contradict the legislative journal entries upon the subject.

14. In performing its high judicial functions, a court should be careful to keep within the constitutional limits of its own power, and to proceed "by due course of law."

Writ dismissed.

*William M. Taliaferro* and *James F. Glen,* for Relator;

*Kelly & Williams,* for Respondents.

WHITFIELD, J.—IN *QUO WARRANTO* proceedings brought by the Attorney General of the State to test the validity of Chapter 9686, Laws of Florida, Acts of 1923, under which the functions of a municipal corporation called Belleair Heights are being exercised, it is alleged said Chapter "is not a law of the State of Florida and was never passed by the Legislature of the State of Florida, in that the said document was never read by its sections, either in the House of Representatives of the State of Florida, or in the Senate of the State of Florida, on its final passage; that the afternoon session of the House of Representatives of the State of Florida, on May 24th, 1923, adjourned at six o'clock P. M. until 8:15 o'clock P. M. on the said day, and reconvened at 8 o'clock P. M. on said date, which facts are shown on page 2856 of the said Journal, to which reference is hereby made, and that it appears thereafter on page 2893 of the said Journal that the document herein before mentioned, purporting to incorporate the said town of Belleair Heights, being House Bill No. 1118, was taken up and read a second time by its title only, and that thereupon the said House Bill No. 1118 was read a third time in full and put upon its passage, and that upon the roll call on the passage of the said bill the vote was 'yeas 60, nays none', so that the bill passed and was ordered certified to the Senate; that the House of Representatives adjourned at the hour of 10:15 P. M. on the said 24th day of May, 1923, which fact is shown at page 2912 of the said Journal; that between the hour of 8 o'clock P. M. or 8:15 P. M. on May 24th, 1923, when the House of Representatives met for the transaction of business, and prior to the consideration of the said document designated as Chapter

9686 of the Laws of Florida, it appears from the Journal of said House that in addition to disposing of other business shown by the said Journal, the House caused to be read in full proposed Acts of legislation which embrace approximately 230 pages of the printed Acts of 1923, and had approximately forty roll calls, and that subsequently to the disposition shown by the said Journal of said House Bill No. 1118, the said House of Representatives at its said night session, prior to the adjournment thereof at 10:15 P. M. on May 24th, 1923, in addition to disposing of other business shown by the said Journal, caused to be read in full proposed Acts of legislation which embraced approximately 90 printed pages of the Acts of 1923, and had approximately twenty additional roll calls of the members of the said House; that the entries in the said Journal at the said night session on May 24th, 1923, are false and untrue, and shown on the face of the said Journal to be false and untrue, in that it was a physical impossibility during the period of the night session to have the roll calls alone, purporting to be shown by the said Journal, without transacting any other business at the said night session and without reading any portion of the proposed Acts of legislation purporting to have been read in full at the said night session, because the said roll calls alone would necessarily have consumed a greater time than the entire duration of the said night session, and it is further demonstrated by the said Journal that the entries therein undertaking to state that the proposed Acts of legislation therein mentioned were read in full on their final passage are false and untrue, because it was a physical impossibility that the said proposed Acts of legislation could have been read in full by sections within the period of the said night session, even if no other business had been transacted at the said night session; that the proceedings shown by the said Journal to have been had at the said night session were.

never in fact actually had, and the said document purporting to be Chapter 9686, Laws of Florida, was never in fact read by sections on its final passage, and a vote thereon by 'yeas' and 'nays' was never in fact taken; that the said document designed as House Bill No. 1118, was certified to the Senate of the State of Florida on May 25th, 1923, and read for the first time by its title at the afternoon session of the said day, which fact is shown at page 2123 of the Senate Journal, which afternoon session concluded at 6:27 P. M., whereupon the Senate took a recess until 8 o'clock P. M. of the said day, which fact is shown at page 2139 of the said Senate Journal, and it appears thereafter on page 2156 of the said Senate Journal that the said document hereinbefore mentioned, purporting to incorporate the said town of Belleair Heights, being House Bill No. 1118, was taken up and read a second time by its title only, and that thereupon the said House Bill No. 1118 was read a third time in full and put upon its passage, and that upon the roll call on the passage of the said bill the vote was 'yeas 23 nays none,' so that the bill passed and was ordered certified to the House of Representatives; that the Senate adjourned at the hour of 9:17 P. M. on the said 25th day of May, 1923, which fact is shown at page 2169 of the said Senate Journal; that between the hour of 8 o'clock P. M. when the Senate met for the transaction of business and prior to the consideration of the said document designated as Chapter 9686 of the Laws of Florida, it appears from the Journal of the said Senate that in addition to disposing of other business shown by the said Journal, the Senate caused to be read in full proposed Acts, of legislation which embrace approximately 90 pages of the printed Acts of 1923, and had approximately 18 roll calls, and that subsequently to the disposition shown by the said Senate Journal of the said House Bill No. 1118, the said Senate at its said night session, prior to the adjourn-

ment thereof at 9:17 P. M. on May 25th, 1923, in addition
to disposing of other business shown by the said Journal,
caused to be read in full proposed Acts of legislation which
embrace approximately 115 additional printed pages of the
Acts of 1923, and had approximately 15 additional roll
calls of the members of the said Senate; that the entries in
the said Senate Journal at the said night session of May
25th, 1923, are false and untrue and shown on the face of
the said Journal to be false and untrue, in that it was a
physical impossibility during the period of the said night
session to have had the roll calls and to have read in full
on final passage the Acts of legislation purporting to have
been read in full at the said night session, because the said
roll calls and the reading of the said proposed Acts of legis-
lation would necessarily have consumed a period many
times the duration of the said night session, even if no
other business had been transacted at the said night ses-
sion.''

By plea and answer the respondents aver ''that the said
Chapter 9686 of the Laws of Florida hereinbefore referred
to was passed by each House of the Legislature of this State
by having the same read in each House and by the reading
of said Bill by sections on its final passage and the vote of
its final passage taken by 'yeas' and 'nays' and said read-
ing on final passage and such vote thereon entered in the
Journal of each House, as will more fully appear by refer-
ence to the entries thereof in the respective Journals of the
respective Houses of the Legislature, reference to which is
each and every requirement of the Constitution of the
State of Florida in the passage of legislative acts was fully
and completely met by each House of the Legislature of
the State of Florida, Special Acts of 1923, as will be more
fully shown by reference to the entries in the Journals of
the respective Houses of the Legislature of the State of

Florida for the year 1923, reference to which is hereby made as fully as if set out at length herein.''

A statute is presumed to have been duly enacted, unless the legislative journals show that the mandatory requirements of the Constitution for the enactment of statutes was not complied with in the consideration and passage of the particular bill. See State *ex rel* v. Brown, 20 Fla. 407; State *ex rel* Turner v. Hocker, 36 Fla. 358, 18 South. Rep. 767; Wade v. Atlantic Lumber Co., 51 Fla. 628, 41 South. Rep. 72; Wade v. Atlantic Lumber Co., 51 Fla. 638, 41 South. Rep. 72; Amos v. Moseley, 74 Fla. 555, 77 South. Rep. 619.

The purpose of the provision of the Constitution that ''every bill shall be read by its sections  *  on its final passage'' is to inform the legislators and the public of the contents of each bill and to prevent hasty legislation.

Our Constitution does not require that the journals shall show affirmatively that a bill was read *''by sections''* on its final passage, and if they do not so show, the presumption, in the absence of affirmative evidence to the contrary, would be that it was read *by sections* as required. In passing upon the constitutionality of statutes generally, no matter from what standpoint the assault thereon may be made, it is a well-settled and cardinal rule that nothing but a clear violation of the Constitution will justify the courts in overruling the legislative will; and where there is a reasonable doubt as to the constitutionality of an Act it must be resolved in favor of the Act, and it should be upheld. Acts of the Legislature duly enrolled and signed by the officers of the two houses and filed in the office of the Secretary of State with the approval of the Governor thereon, are *prima facie* valid and authoritative laws, but the journals of the two houses that enacted them may be resorted to to ascertain whether the mandatory requirements of the Constitution to have been complied with by the Legislature

in their enactment, and if such journals show explicitly, clearly and affimatively that any essential constitutional requirement had not been complied with, or if they fail to show any essential step in the progress of enactment that the Constitution expressly requires them to show, such for example, as the entry of the aye and noes upon the final passage of any bill in either house, then such journals would prevail as evidence, and the enrolled bill, as evidence of law, would have to fall. The journals kept by the two houses of the Legislature of their proceedings are public records of which the courts of the State will take judicial notice. State *ex rel.* Turner v. Hocker, 36 Fla. 358, text 359, 18 South. Rep. 767.

Parol evidence is not admissible against the affirmative showing of the journals of the Legislature. Wade v. Atlantic Lumber Co., 51 Fla. 638, 41 South. Rep. 72.

In adjudicating matters involving legislative proceedings in enacting statutes, the courts will accept as true the entries relative to such matters as they appear in the journals that are required by the Constitution to be kept by each house; and parol evidence will not be received to contradict such entries. No exception to the rule is established in this case. See McCulloch v. State, 11 Ind. 424; Miller v. State, 3 Ohio St., 475; 36 Cyc. 958.

The courts have no substantive power to review and nullify legislative proceedings or enactments; but in adjudicating litigated rights under a statute the courts may determine whether the legislative journals show that the statute was not duly enacted.

The Constitution provides that "every bill" passed by the Legislature "shall be read by its sections" "on its final passage" in each house, but it does not require an entry to be made in the journals that a bill was so read, therefore the courts will conclusively presume that a bill was read

by its sections on its final passage in each house, unless the contrary clearly appears by the journals.

In this case it is contended that the statute here involved was not duly passed and consequently is invalid because the legislative journals state that each of the several bills passed at a particular sitting was read by its title on its final passage, when it was an impossibility for all of the bills so passed to have been severally and consecutively read by sections during the time the legislative bodies were in session as stated in the journals.

Even if all of the journal entries made at one sitting of a legislative body, when taken as an entirety, show that it is impossible for all of the entries to be true, and only a part of the entries are involved in a suit, if the particular entries in litigation can possibly be true, parol evidence is inadmissible to show which ones of all the entries, if any, are untrue, and no presumptions for that purpose are indulged, therefore the entries involved in the case must be taken to be true, whether other entries, not involved in the case, are or are not true.

It is in effect contended for the relator that it was absolutely impossible for all of the bills that were passed at the particular sittings of the Senate and House of Representatives respectively to have been read by sections as is stated in the entries of the legislative journals, unless at least some of them were read simultaneously during the same time, and as entries in legislative journals must be accepted as true, if there is any hypothesis upon which they may be true, such hypothesis must be assumed, and that the only hypothesis upon which all the entries may be true is that there were simultaneous readings of the bills to the extent necessary to read all of them within the limits of the sitting, and to transact the other business shown by the journals to have been transacted at that sitting, and that a simultaneous reading of more than one bill on final pas-

sage is not contemplated by the Constitution, but that the Constitution by intendment mandatorily requires each bill to be severally and alone "read by its sections on its final passage," as a prerequisite to the validity of the enacted bill as a statute, and that therefore the bill here considered could not possibly have been read in the manner required by the Constitution, with a consequence that the Act is invalid. This argument as to an assumed simultaneous reading of the bills fails as the journal entries clearly indicate that the bills were not read simultaneously, but that all the bills were taken up consecutively for reading and final passage in the order shown by the journal entries; and this accords with common knowledge of legislative proceedings in this State.

Conceding that as there was not possibly sufficient time for all of the bills that were passed at the particular sessions to have been read by sections as required by the Constitution, and that consequently all of the journal entries cannot possibly be true, it does not follow that some of the entries are not true, since one or more of the bills could have been read by sections within the time, and parol evidence will not be received to contradict any of the entries by showing which of them, if any, are untrue, and the maxim *falsus in uno falsus in omnibus* is not applicable. Nor can it be assumed that the last or any other particular ones of the bills that were passed, were not read by sections when all could not possibly have been so read within the time the body was in session, for the courts will not entertain presumptions against the truth of any of the journal entries of the proceedings of a legislative body.

It is suggested that the entries in the legislative journals as to the hours of adjournment are not required by the Constitution and are made by the clerk, while the entries as to the reading of bills by sections on final passage are made to show that the bills were in fact read as required by the

Constitution, and that therefore the entries as to the hour of adjournment cannot be invoked to show that the legislative body did not in fact adjourn at a later hour than that stated in the journal entries, which would have given ample time for the reading of the bills in open session as is required by the organic law. While the Constitution may contemplate such entries, it does not expressly require the fact of the reading of bills by sections on final passage to be entered in the journals. The journals of the succeeding day show that the journals of the preceding day were approved by the respective legislative bodies, and such approval must be regarded as including all the entries properly contained in the preceding day's journals in the absence of entries showing the approvals to be modified. See State *ex rel.* Kohlman v. Wagener, 130 Minn. 424, 153 N. W. Rep. 749. All of the appropriate entries in legislative journals import verity, and it is not here necessary to determine whether the entries as to the reading of bills are of greater probative force than the entries as to the hours of adjournment which are made in ordinary and proper procedure, each house being given by the Constitution express authority to "determine the rules of its procedure."

Even if the legislative journal of the Senate *conclusively* shows that the Senate was in session only one hour and seventeen minutes, and even if the court may by a judicial consideration of natural laws find that it was a physical impossibility for each of the bills passed during the session of one hour and seventeen minutes to have been consecutively "read by its sections" "on its final passage," yet only one of the bills is here involved, and that one could easily have been separately "read by its sections" "on its final passage," and parol evidence not being admissible to contradict the legislative journal entries, it must be assumed that as to the bill here involved, the journal entry that it was "read by its sections" "on its final passage,"

is true.  The court will not assume that legislative journal entries as to the bill in litigation are untrue; and the truth of such entries as to other bills is not presented for adjudication.  This should be the holding here, even though upon a challenge of the validity of each of the other bills passed at the same sitting of the Senate, a similar result would follow, and consequently all of the enacted bills would be held valid, when it was in fact an impossibility to read and pass all of them in the manner that is mandatorily required by the Constitution within the time during which the journal *states* that the Senate was in session.  A similar discussion applies to the proceedings of the House.  The burden is upon the relator to show by the legislative journals that the statute was not duly enacted.  It has not been done.  If there was an unauthorized simultaneous reading of several bills in the Senate or in the House, or if any bill was in fact not "read by its sections   *   on its final passage" the remedy is in the political departments either by appealing to the Governor to veto the bills, or by action of the electors at the polls, at least in the absence of a showing *by the journals* that a particular bill was in fact not read, or that it could not possibly have been read, by its sections on its final passage.

The statute must be held to be valid unless the legislative journal entries show that the engrossed bill was not "read by its sections on its final passage," and as the journal entries state that the particular bill here involved was "read by its sections on its final passage," and it does not appear that such entries with reference to that bill cannot possibly be true, the invalidity of the Act is not shown by the journals which alone can prove the Act to be invalid because not duly enacted by the Legislature.

To adjudicate here, where only one bill is involved, that all of the bills passed at the particular sitting of the legislative body, are invalid because all of them could not pos-

sibly have been read by sections, as required by the Constitution, within the time the body was in session, would be an ineffectual attempt to determine rights of parties who are not before the court and who have had no opportunity to be heard. Such an adjudication would be a nullity as to bills not involved here. In performing its high judicial functions, the court should be careful to keep within the constitutional limits of its own power and to proceed "by due course of law."

The writ is dismissed.

ELLIS, TERRELL AND STRUM, J. J., concur.

WEST, C. J., concurs specially.

BROWNE, J., dissents.

WEST, C. J., concurring.

While concurring generally, the following considerations influence, in a measure, my conclusion.

The legislative journals show *prima facie* that the Act challenged in this proceeding was duly enacted, that is to say, that the constitutional requirements in the passage of the Act were in all respects complied with. But it is contended that the journals record the time of convening and the time of adjournment of the sessions in which the Act was passed by the respective legislative bodies, and that giving to these entries the quality of unimpeachibility results inevitably in the conclusion that what the journals record as having occurred could not have been done, and cannot therefore be true, because it was physically impossible to have done all that is recorded in the journals as having been done within the time intervening between the indicated hours of convening and adjourning.

Specifically it is alleged that on the day the challenged Act was passed by the House of Representatives the House adjourned at 6 o'clock P. M. until 8:15 P. M. and reconvened at 8 o'clock p. m. and again adjourned at 10:15 P. M.; that between the hours of 8 o'clock P. M. or 8:15 P. M. and 10:15 P. M., the hour of adjournment, the session at which the Act was passed by the House, "it was a physical impossibility" to do all that was recorded in the House Journal as having been done, and therefore, "that the entries in the said journal of the said night session of May 24, 1923, were false and untrue and shown on the face of said journal to be false and untrue;" that on the day the Act was passed by the Senate the Senate convened at 8 o'clock P. M. and adjourned at 9:17 P. M.; that between the hours of 8 o'clock P. M. and 9:17 P. M., the session at which the Act was passed by the Senate, "it was a physical impossibility" to do all that was recorded in the Senate Journal as having been done, and, therefore, "that the entries in the said Senate Journal of the night session of May 25, 1923, are false and untrue and shown on the face of said journal to be false and untrue."

The significant journal entries are of two classes, one of things mandatorily required by the Constitution to be done in the passage of an Act through the Legislature, namely, the reading of the proposed Act "by its sections" on its second reading and on its final passage, unless on its second reading two-thirds of the members present shall deem it expedient to dispense with this rule; and the taking of the votes by yeas and nays on final passage of the bill (Sec. 17, Art. 3, Const. of Fla.); the other of things not required by the Constitution to be done, namely, indicating the hours of convening and adjourning of the respective houses of the Legislature. If the first is not done, the bill is not passed. But the second may be entirely omitted without in anywise affecting the validity of the action taken for the reason

that the hours of convening and adjourning of a legislative day or session are not material.

The Constitution requires that each house shall keep a journal of "its own proceedings." (Sec. 12, Art. 3, Const.) The "journal" is a "daily record" of the "proceedings" of the House. Amos v. Mosley, 74 Fla. 555, 77 South. Rep. 619. Where journal entries of "legislative proceedings are explicit and conflict even with legislative acts regularly authenticated, the journals are controlling. State *ex rel.* v. Green, 36 Fla. 154, 18 South. Rep. 334. My thought is that journal entries of things done in compliance with mandatory constitutional requirements in order to give validity to the Act cannot be impeached or rendered nugatory by other journal entries not required to be made and not material, and in the absence of which the validity of the Act would be in no wise affected.