DOYLE E. CARLTON, as Governor, for the use of Franklin County, v. CONSTITUTION INDEMNITY COMPANY.

157 So. 431.

Division B.

Opinion Filed October 31, 1934.

*R. Don McLeod, Jr.*, for Plaintiff in Error;

*Mabry, Reaves & White* and *Waller & Pepper*, for Defendant in Error.

BUFORD, J.—Suit was instituted by plaintiff in error against the defendant in error as a compensated surety on the bond of Standish Engineering Corporation given to secure the granting to Standish Engineering Corporation of a franchise to construct and maintain a bridge in Franklin County, Florida, under the provisions of Chapter 12749, Laws of Fla. 1927. Demurrer was sustained to amended declaration and, the plaintiff not desiring to further amend, final judgment was entered for the defendant on the demurrer.

Plaintiff sued out writ of error.

The title to Chapter 12749, *supra,* is indicative of its purpose and is as follows:

"AN ACT to encourage and promote the construction, Maintenance and Operation of a Toll Bridge, Causeway and Highway across the Apalachicola River and its Estuary and East Bay from a Point at or near Apalachicola to a Point at or near East Point Wholly Within Franklin County, Florida, to be Used in Connection with the Public Roads in the County of Franklin; Providing for a Franchise of said Toll Bridge, Causeway and Highway and Providing the Terms and Conditions Thereof; granting the Right of Eminent Domain to the Holders of such Franchise; providing for the Regulations of the Operation of the said Toll Bridge, Causeway and Highway When Constructed Under the Provisions Hereof; Providing a Method and Limiting the Time for its Exercise in which the State of Florida or the County of Franklin or both May Acquire the said Toll Bridge, Causeway and Highway; and Repealing all Existing Laws in Conflict Herewith."

Section 16 of the Act provides as follows:

"The early construction and completion for traffic of said bridge, causeway and highway is hereby declared to be an urgent public necessity and such liberal construction shall be given to this Act as may effectuate that end."

Section 3 of the Act is as follows:

"Any bridge, causeway and highway constructed under the provisions of this Act shall be constructed in accordance with the specifications of the State Road Department of Florida for similar work and the plans and specifications therefor shall bear the approval of the State Road Department before the construction thereof shall be authorized. Before the granting of any franchise under the provisions

hereof by the Board of County Commissioners of Franklin County the applicant therefor shall file with the Board of County Commissioners of said county a bond in the sum of Twenty-Five Thousand Dollars with one or more surety companies authorized to do business in the State of Florida as surety or sureties thereon. The said bond to be payable to the Governor of the State of Florida for the use and benefit of said Franklin County and conditioned upon the commencement in good faith of the construction of said bridge, causeway and highway within such time as may be limited in the said franchise, and the continuous prosecution of the construction thereof and the completion of such bridge, causeway, and highway so that the same shall be open for traffic within such time as may be limited for the completion thereof in the said franchise. Upon any breach or default in any of the conditions of said bond the sum thereof shall be forfeited to the State of Florida for the use and benefit of Franklin County, and shall be paid into and become a part of the road and bridge fund of said county."

Section 4 of the Act is as follows:

"It shall be a condition of any franchise granted hereunder that the preliminary survey and soundings for said bridge and causeway shall be completed within six months of the date of such franchise; that the actual work of constructing the said bridge, causeway and highway shall be commenced in good faith within one year from the date of such franchise; that the work of constructing such bridge, causeway and highway shall be prosecuted continuously saving for elemental prevention; and that said bridge, causeway and highway shall be completed and open for traffic with proper approaches within four years of the date of such franchise."

Section 11 of the Act is as follows:

"The State of Florida does hereby grant and give to any person, firm or corporation to whom such franchise shall be granted by the Board of County Commissioners of Franklin County, Florida, in accordance with the provisions of this Act a franchise to build, construct, maintain and operate such toll bridge, causeway and highway to every intent and purpose as if such franchise had been so granted by the State direct to such person, firm or corporation; subject to all of the terms and conditions of this Act."

The amended declaration was in three counts. The first count is the conventional common law count claiming liquidated damages for breach of bond.

The second count avers the allegation of the first count and alleges the circumstances under which the bond was given.

The third count of the declaration avers all of the matters contained in the first and second counts by apt reference thereto and alleges further:

"That the defendant executed the said bond for compensation and for the purpose of procuring for the principal therein the grant by the State of Florida through the Board of County Commissioners of Franklin County to the said principal in said bond of the exclusive franchise to construct, maintain and operate the said toll bridge and causeway referred to therein; that the purpose of the said bond was to insure the beneficiary against the failure or default of the principal to perform the conditions therein named; that relying upon such insurance and in consideration thereof, a franchise to construct, maintain and operate the said bridge and causeway was granted to the said principal who held and enjoyed the same exclusively until the 4th day of August, A. D. 1931, a period of nearly four

years during which time the said State and County were thereby prevented and precluded from constructing the said bridge or granting the privilege to do so to any other; that in the later part of the period during which the said principal held the said franchise the nation and the State of Florida became affected by a financial and business depression which has rendered it impossible and impracticable to procure finances for the construction of the said bridge and causeway in any manner since the franchise so held by the principal in said bond has been revoked and although the State Road Department with the aid of Franklin County has constructed and completed since the granting of the said franchise a paved road extending through said county which is State Road Number Ten, of which the said bridge and causeway was to form an essential part and was to be the connecting link across the Apalachicola River and its estuary and East Bay, yet the said road ends on the East side of East Bay and on the West side of the Apalachicola River, there being no connection across said Bay and River except by boat.

"That because of the default of the principal the plaintiff has been compelled to bring this suit to collect his damages and has contracted and agreed with R. Don McLeod, Jr., Attorney for the plaintiff, to pay to him compensation for his services herein as may be adjudged by the court to be a reasonable compensation for his services in the premises.

"Wherefore plaintiff claims that the said bond is in legal effect a contract of insurance; that the condition of the said bond or contract has been totally breached by Standish Engineering Corporation, the principal therein, in the manner hereinabove set forth, to the damage of the plaintiff; wherefore plaintiff sues and claims liquidated damages in the sum of Fifty Thousand Dollars together with interest thereon

at the rate of eight per cent. per annum from the date of the institution of this suit and its reasonable attorney's fees to be adjudged by the court and the costs of this proceeding.

"Copies are hereto attached of the original bond sued upon marked 'Exhibit A,' of the resolution of the Board of County Commissioners granting an option for the franchise to Standish Engineering Corporation marked 'Exhibit B,' of the three applications and agreements for extension executed by defendant marked respectively 'Exhibits C, D, and E.' "

The bond was in the penal sum of $50,000.00, dated November 15, 1928, and was conditioned as follows:

· ·"THE CONDITION OF THIS OBLIGATION IS SUCH THAT IF THE ABOVE BOUNDED, STANDISH ENGINEERING CORPORATION, or its associates, heirs, administrators and legal representatives shall on or before the 15th day of May, A. D. 1929, begin in good faith the actual construction of a certain toll bridge or causeway to be used in connection with the public roads and highways of Franklin County, Florida,. and to extend from some point within the City Limits of the City of Apalachicola on the West Side of the Apalachicola River across the Apalachicola River East to or near East Point in said county in accordance with the provisions of law and shall carry on the work of construction of said bridge or causeway continuously until the same shall be completed, and shall complete said toll bridge or causeway and the approaches thereto and have the same open for traffic on or before November 15th, A. D. 1930, all as provided by an Act of the Legislature of the State of Florida being Chapter 12749, Laws of Florida, 1927, authorizing said Franklin County to grant said franchise and in accordance with a resolution by said commissioners dated July 18th, A. D. 1928, granting said Standish Engineering

"Corporation an option on said franchise and all in accordance with a subsequent franchise to construct, maintain and operate a toll bridge, causeway and highway granted to said Standish Engineering Corporation on November 15th, A. D. 1928, by the County Commissioners of Franklin County, Florida, then this obligation shall become null and void, otherwise to be in full force and effect."

The time for the commencement of work and for the completion of work was several times extended upon application of the principal and surety, the last instance being such as to extend the time for the commencement in good faith of the actual construction of the toll bridge to the 15th day of November, 1930, and to extend the time for the completion of the toll bridge open for traffic to December 31, 1931. It was alleged that the principal totally failed either to commence or complete the work within the time provided for in the contract by extension and that it never at any time either commenced or completed the construction of such bridge.

A demurrer was filed to the amended declaration. The first ground of demurrer questions the validity of Chapter 12749, *supra,* because of alleged irregularities in the passage of the Act.

The second ground of demurrer attacks the validity of the Act as being in contravention of Section 20, Act III of the Constitution in that it attempted to regulate the jurisdiction and duties of county commissioners.

The third ground of demurrer attacks the validity of the Act on the ground that it attempts to delegate to the authorities of Franklin County legislative authority in violation of Section 1, Article III of the Constitution.

The fourth ground of the demurrer is that the bond sued

upon is not the bond required to be given under the terms of Chapter 12749, Laws of Fla.

The Fifth, Sixth, Seventh and Eighth grounds of demurrer are as follows:

"Fifth: The matter with which the bond sued on deals, namely: the construction of a bridge across a navigable bay of the State of Florida, and the grant of an exclusive franchise for that purpose, was the subject of contract between the designated public officials and the Standish Engineering Company by virtue, and only by virtue, of said Chapter 12749, if at all, and it affirmatively appears that the County Commissioners, in awarding said franchise and in taking said bond, so far departed from the mandatory provisions of the said Act of the Legislature as to make ineffective the attempted grant of franchise, and to make void the bond sued on as an obligation of the surety."

"Sixth: The bond sued on is not conditioned upon the commencement in good faith of the construction of a bridge over and across the Apalachicola River, and its estuary, and East Bay, from a designated point on the West side of Apalachicola River, at or near the City of Apalachicola, to a designated point on the East side of East Bay, or on the east side of the estuary of said Apalachicola River, at or near East Point, but, on the contrary, is conditioned upon the commencement in good faith and the construction of a bridge from some undetermined and uncertain point to some undetermined and uncertain point contrary to the statute."

"Seventh: It does not appear that Doyle E. Carlton, as Governor of the State of Florida, has any cause of action, nor does the declaration state any cause of action in his favor against this defendant."

"Eighth: The penalty of the bond sued on exceeds that

prescribed by the mandatory terms of the statute and violates the manifest spirit, purpose and policy of the statute."

We think there is no merit in the first, second and third grounds of demurrer. State v. Corley, 89 Fla. 36, 104 Sou. 577; State v. Duval County, 76 Fla. 180, 79 Sou. 892.

The fourth and eighth grounds of demurrer raise the same question and, therefore, may be considered together.

. The order on demurrer was as follows:

"1st. That the provisions of Chapter 12749, Acts of 1927, authorizing the County Commissioners of Franklin County, Florida, to grant a toll bridge franchise do not violate the inhibitions of Section 20 of Article III of the Constitution of Florida.

."2nd. That the Act was regularly passed by the Legislature. That the error entered in the Senate Journal was clearly an error, when same is considered with the other entries regularly made.

"3rd. The Court finds that Chapter 12749 provided that the County Commissioners of Franklin County, Florida, in granting said franchise should take an indemnity bond in the sum of Twenty-Five Thousand Dollars; that the approaches to the bridge should be designated in the Franchise; that the construction of the bridge should be commenced within one year from the granting of the franchise and should be completed within four years. The Court holds that these provisions of the Act should have been incorporated in the franchise.

"The Court finds that the provisions of the franchise granted are materially variant from the provisions of the Act as above mentioned."

. The appeal questions the correctness of the third paragraph of the order and also involves the last paragraph of the order which is not numbered.

The declaration is framed upon the theory that the plaintiff is entitled to recover on the bond as a statutory obligation and that the plaintiff is entitled to recover that part of the bond which is authorized by statute, that is that although the bond is in the penal sum of $50,000.00 the plaintiff is entitled to recover $25,000.00 of that amount under the statutory liability without proof of special damages.

We do not think this position is tenable. To entitle the plaintiff to recover under a statutory bond the bond must be given in substantial compliance with the statute. See Beekman, *et al.,* v. Third Ave. R. R. Co. (N. Y.) 47 N. E. 277; Rocpoort Coal Co. v. Tilford (Ky.) 300 S. W. 898.

Section 4 hereinbefore quoted places a definite limitation upon the authority of the County Commissioners to grant the franchise authorized by the Act. It will be observed that that section provides that the preliminary survey and soundings of said bridge and causeway should be completed within six months from the date of such franchise; that the actual work of constructing the said bridge, causeway and highway should be commenced in good faith within one year from the date of such franchise; that the work of constructing such bridge, causeway and highway should be prosecuted continuously, saving for elemental prevention, and that said bridge, causeway and highway should be completed and open for traffic with proper approaches within four years of the date of such franchise.

The County Commissioners did not conform to these provisions.

It will be observed that the franchise became effective on the date of delivery of the bond, November 15, 1928, and that by the several purported extensions of the time for the commencement in good faith of the actual construction of the toll bridge was extended to the 18th day of Novem-

ber, 1930, which constituted one year more time than was allowed under the provisions of the statute. It cannot be maintained that there is any difference in effect between the two processes of allowing two years in which to begin the actual construction where one is that of fixing that time in the franchise as originally granted and where it is accomplished by resolutions extending the time so as to give the franchise effectual life for a like period.

When the County Commissioners of Franklin County by resolution extended the time for the commencement of work under the franchise beyond November 15, 1929, it thereby waived its right to hold the surety on the bond for failure to commence work as required by statute within the period of one year from the original date of the franchise and thereby accomplished the purported granting of a franchise which it was authorized to grant under the statute.

Courts will take judicial knowledge of the fact that the waters lying between the City of Apalachicola on the West side of the Apalachicola River and East Point constitute navigable waters of the State of Florida and can not be obstructed without statutory authority. As the statute did not authorize the granting of a franchise to construct a bridge unless actual work upon such construction should begin within one year from the date of such franchise, the purported extension of the franchise beyond that date was without authority of law; and the exclusive right purported to be granted therein was not effective in law.

A bond to secure performance of a contract which contract may only be effective when authorized by statute and which contract purported to grant an exclusive privilege or franchise is without consideration when it appears that the public officials had no statutory authority to enter into such

contract. See Town of Kirkwood v. Merrimac Highlands Co., *et al.,* (Mo.) 68 S. W. 761, wherein the Court held:

"Invalid parts of an ordinance or statute may be eliminated, leaving the rest of the law in force; but where the valid and invalid parts of legislation are so commingled as to make severance impossible, or where good parts are so obviously dependent upon those which are invalid, the whole act must fail.

"Where a town had authority to contract for a water supply for a period not to exceed 10 years, it was held that an agreement for 20 years was wholly invalid, and that it was not good for 10 years."

An exclusive franchise to construct a toll bridge is a special privilege which must be granted by governmental authority. Therefore, in this case, the franchise provided for by the legislative Act constituted the entire subject matter of the contract and the validity of the contract depends entirely upon compliance with the statute. Leonard v. Bailey Street Wharf Co., 59 Fla. 547, 52 Sou. 818; Elliott on Roads and Streets, 4th Ed. Vol. 1, Secs. 46 and 54.

Now the bond in this case rests upon no consideration of its own but is dependent for consideration entirely upon the statute and, therefore, if it was not authorized by statute it could constitute no cause of action. See Stevens, *et al.,* v. Morgan (Neb.) 93 N. W. 180.

In 9 C. J., Sec. 41, we find the rule as follows:

"A statutory bond may be good as a common law obligation although insufficient under the statute because of noncompliance with its requirements, provided, it is entered into voluntarily and on a valid consideration and does not violate public policy or contravene, any statute. But this rule cannot be extended to cases in which to hold the parties liable as on a bond at common law would be to charge them

with liabilities and obligations greater than, or different from those which they assumed in the instrument executed by them. Moreover, in order to uphold a bond as a valid common-law obligation on which a recovery may be had as such, it must be done independently of the statute by the authority of which it was intended to be executed. But the same rules as to bonds which may be enforced as common-law obligations between individuals do not apply to bonds executed to an officer of the State for the appearance of persons charged with criminal offenses, for they are purely statutory, and if not taken as required by the statute cannot be enforced as common-law bonds. If a bond is not good as a statutory bond, but is good as a common-law bond, there can be but one recovery on it. Such a bond is not to be regarded as a statutory, but only as a common-law bond, hence it must be declared on as a common-law bond; and it creates no liability beyond its own terms, notwithstanding the statutory provision in compliance with which it was intended to be given, unless there is a special remedial statute operating to effect that result. Such a bond cannot be so enforced where it has never been delivered to, or rather ratified by, the obligee, or where the condition on which it was executed has not been complied with."

Many authorities are cited to support the text. Additional authorities are cited in support thereof in Annotations C. J. Cyc. Service 1921, page 669.

It follows that the judgment was without error and should be affirmed. It is so ordered.

Affirmed.

WHITFIELD, P. J., and BROWN, J., concur.

ELLIS and TERRELL, J. J., concur in the opinion and judgment.

DAVIS, C. J., not participating.