430 So.2d 904 (1983)
STATE of Florida, Appellant,
v.
Robert KAUFMAN, Appellee.
No. 63459.
Supreme Court of Florida.
April 21, 1983.
*905 Jim Smith, Atty. Gen., J. Kendrick Tucker, Deputy Atty. Gen. and Gerald B. Curington, Asst. Atty. Gen., Tallahassee, for appellant.
Richard Rhodes, Orlando, for appellee.
D. Stephen Kahn, Terri Jo Kennedy, Leonard Schulte and Jane C. Hayman, Tallahassee, for The Florida Senate, and Mark Herron, Tallahassee, for The Florida House of Representatives, amici curiae.
McDONALD, Justice.
The state appealed a trial court order declaring section 893.135, Florida Statutes (Supp. 1980), the drug trafficking statute, unconstitutional.[1] The Fifth District Court of Appeal certified the order to this Court as requiring immediate resolution because the issues involved are of great public importance and will have a great effect on the proper administration of justice throughout the state. We have jurisdiction pursuant to article V, section 3(b)(5), Florida Constitution, and reverse the trial court order.
The state charged Kaufman with violating section 893.135(1)(e) by knowingly selling, delivering, or possessing five kilograms or more of methaqualone. Kaufman moved for dismissal, alleging that section 893.135 was unconstitutional because the legislature did not comply with the requirements of article III, section 7, Florida Constitution, in enacting the statute in 1979. After reading the transcripts of recordings of the applicable floor debates, the trial court concluded that the enacting bill in 1979 and the amending bill in 1980 had not been read as required by the constitution and declared section 893.135 unconstitutional. The fifth district then certified the trial court order to this Court.
The trial court recognized that, on the face of the legislative journals, both houses of the legislature had properly passed the legislation creating section 893.135 in 1979 and amending it in 1980.[2] The court saw the issue, however, as whether it could consider extraneous evidence to contradict and even overcome statements in the legislative journals. The state argued that extraneous evidence, in the instant case tape recordings of the legislative proceedings and transcripts generated from those recordings, constituted parol evidence which could not be used to impeach the journals.
Unlike the trial court, we find the state's argument to be persuasive. This Court has long held that, when enrolled, signed, and filed, acts of the legislature are prima facie valid. State ex rel. Buford v. Carley, 89 Fla. 361, 104 So. 577 (1925); Amos v. Gunn, 84 Fla. 285, 94 So. 615 (1922); State ex rel. Turner v. Hocker, 36 Fla. 358, 18 So. 767 (1895). Courts have no substantive power to review and nullify legislative proceedings, but can determine whether the legislative journals show that a statute has been duly enacted. State ex rel. Buford. This Court has held that the legislative journals are the only evidence superior in dignity to recorded acts and that acts can only be impeached by showing a clear constitutional violation on the face of the journals. Amos v. Gunn; State ex rel. Turner.[3]
Allowing "uncertain parol evidence to countervail the legislative journals ... would produce overwhelming uncertainty as to the validity, force or effect of every *906 law upon the statute books." Wade v. Atlantic Lumber Co., 51 Fla. 628, 639, 41 So. 72, 75 (1906). This Court has identified only a few, very specific instances where using parol evidence to impeach a journal might be allowed. In Amos v. Gunn the Court recognized that recorded acts could be impeached by public records of superior or equal dignity. Clear and legally sufficient allegations of fraud might be the basis for allowing parol evidence, but, in the absence of such allegations, a court
cannot go behind the official legislative journals, where, as here, they are regular and adequate on their face to show the constitutional passage of the act, and permit their impeachment by parol evidence or sustain as sufficient allegations in pleadings which could only be proven by parol testimony or by some record of less dignity than such legislative journals... . [T]o set a precedent that would permit the impeachment of official legislative journals by parol would open a veritable Pandora's box of evils more serious even than those of which the appellants so ably and plausibly complain.
Jackson Lumber Co. v. Walton County, 95 Fla. 632, 660-61, 116 So. 771, 781 (1928). Finally, actions taken by a legislature after it ceases to be a duly constituted legislature, but apparently valid on the face of the journals, can be attacked by the use of parol evidence to show when the action was actually taken. State ex rel. Landis v. Thompson, 121 Fla. 561, 164 So. 192 (1935).
Kaufman's claim in the trial court fits within none of these exceptions. Because the legislature was in regular session, the Thompson exception is not applicable. Likewise, Kaufman has made no, let alone sufficient, allegations of fraud. Kaufman convinced the trial court, however, that the recordings and transcripts were, as the trial court put it, "proper evidence" for impeaching the journals.
We disagree because the recordings and transcripts are not public records of equal or superior dignity to the legislative journals. "A public record is one required by law to be kept, or necessary to be kept in the discharge of a duty imposed by law, or directed by law to serve as a memorial and evidence of something written, said or done." Amos v. Gunn, 84 Fla. at 343, 94 So. at 634. The legislature is not required by law to make or keep electronic recordings of its proceedings, and the instant recordings and transcripts are not public records.[4] Legislative journals, on the other hand, are public records. See art. III, § 4(c), Fla. Const. Because the evidence presented to the trial court, with the exception of the journal entries, is not a public record, we hold that it cannot be used to impeach the legislative journals unless the claim would fall within the Jackson Lumber or Thompson exceptions.[5]
Moving on to the second major part of this appeal, Kaufman argues that the article III, section 7 requirement that bills be read three times by title[6] means reading three times by full title. The state and the legislature, on the other hand, argue that "title" can mean something less than "full title." The trial court agreed with Kaufman.
Article III, section 17 of the 1885 constitution required that bills be read in full.[7] *907 The purpose of reading bills by sections was to inform the legislature and the public as to the bills' contents and to prevent the hasty passage of legislation. State ex rel. Buford. The advent of practical means of reproducing bills in written form, however, has meant that each legislator receives copies of proposed legislation. This widespread availability obviates the need for reading every word of a bill during consideration on the floor of the legislature. The 1968 constitution recognized this change by allowing the reading of bills by title only.
Bills have three titles: the caption title, i.e., "SB 83;" the short title, i.e., "An act relating to possession of controlled substances;" and a full title, i.e.,
SB 83  A bill to be entitled An act relating to possession of controlled substances; adding s. 893.13(1)(h), Florida Statutes; requiring that persons convicted of possession of more than 100 pounds of cannabis be sentenced to and be required to serve a minimum of 3 years' imprisonment; providing an effective date.
The state and the legislature claim that since 1969 bills have been read by caption title or, at the most, by short title. Either of these, they claim, fulfills the constitutional requirement of reading by title.
We agree. A contemporaneous construction of a constitutional provision by the legislature is presumptively correct unless manifestly erroneous. Vinales v. State, 394 So.2d 993 (Fla. 1981); Brown v. Firestone, 382 So.2d 654 (Fla. 1980); Greater Loretta Improvement Association v. State ex rel. Boone, 234 So.2d 665 (Fla. 1970). The obvious purpose of reading a bill's title is to inform the legislators and the public as to what bill is being voted on. Given the widespread publication of copies of bills, reading a bill's number or short title identifies which bill is being considered. We cannot say that the legislature's interpretation of the reading requirement is erroneous.
We again declare that section 893.135, Florida Statutes (Supp. 1980), is constitutional. The order of the trial court is reversed.
It is so ordered.
ALDERMAN, C.J., and ADKINS, BOYD, OVERTON, EHRLICH and SHAW, JJ., concur.
NOTES
[1] This Court has previously held § 893.135 to be constitutional against numerous attacks on its validity. State v. Thebeau, 405 So.2d 973 (Fla. 1981), appeal dismissed, 456 U.S. 920, 102 S.Ct. 1963, 72 L.Ed.2d 436 (1982); State v. Newman, 405 So.2d 971 (Fla. 1981); State v. Leicht, 402 So.2d 1153 (Fla. 1981), cert. denied, 455 U.S. 989, 102 S.Ct. 1611, 71 L.Ed.2d 848 (1982); State v. Werner, 402 So.2d 386 (Fla. 1981); State v. Benitez, 395 So.2d 514 (Fla. 1981).
[2] The 1979 bill was SB 83 and the pertinent references are: Journal of the House, Regular Session 1979, at 158-59; Journal of the Senate, Regular Session 1979, at 80-81, 83. The 1980 bill was CS for HB 263 and the pertinent references are: Journal of the House, Regular Session 1980, at 651; Journal of the Senate, Regular Session 1980, at 577.
[3] In the event of conflict between an act and the journal, the journal controls. Amos v. Gunn, 84 Fla. 285, 94 So. 615 (1922); State ex rel. Boyd v. Deal, 24 Fla. 293, 4 So. 899 (1888).
[4] Both houses of the legislature record floor debates, but "the manner of recordation and storage makes these tapes informal working tools rather than official records of legislative proceedings." Rhodes, White, & Goldman, The Search for Intent: Aids to Statutory Construction in Florida, 6 Fla.St.U.L.Rev. 385, 399 (1978). If these tools could properly be considered, they would show that the legislature was well aware of the contents and purposes of the bills under attack here.
[5] Courts in several other jurisdictions have also concluded that tape recordings cannot be used to impeach legislative journals. Jensen v. Matheson, 581 P.2d 77 (Utah 1978); In re Interrogatories of the Governor, 195 Colo. 198, 578 P.2d 200 (1978); City of Rye v. Ronan, 67 Misc.2d 972, 325 N.Y.S.2d 548 (1971), aff'd, 40 A.D.2d 950, 338 N.Y.S.2d 384 (1972).
[6] Art. III, § 7 states: "On each reading, it [a bill] shall be read by title only, unless one-third of the members present desire it read in full."
[7] "Every bill shall be read by its sections on its second reading and on its final passage... ."