441 F.2d 795
 Anna BARRERA et al., Appellants,
v.
Hubert WHEELER, Missouri State Board of Education, J. Warren
Head, Dale M.Thompson, Mrs. True Davis, Jack Webster, Elston
J. Melton, W. Clifton Banta, Sidney R. Redmond and F. Burton
Sawyer, Appellees.
 No. 20566.
 United States Court of Appeals, Eighth Circuit.
 April 28, 1971.
 
 Louis C. Defeo, Jr., Jefferson City, Mo., and Thomas M. Sullivan, Downey, Sullivan & Fitzgerald, Edward L. Fitzgerald, Kansas City, Mo., for appellants.
 Harry D. Dingman, Kansas City, Mo., and Leo Pfeffer, New York City, Kuraner, Oberlander, Dingman, Brockus & Lowe, James B. Lowe, Kansas City, Mo., for appellees.
 L. Patrick Gray, III, Asst. Atty. Gen., Robert V. Zener, Atty., Dept. of Justice, Washington, D.C., Wilmot R. Hastings, Gen. Counsel, Harry J. Chernock, Asst. Gen. Counsel, Theodore Sky, Atty., Dept. of Health, Education and Welfare, Washington, D.C., of counsel, for United States Commissioner of Education, amici curiae.
 Before MATTHES, Chief Judge, Mr. Justice CLARK,* and LAY, Circuit judge.
 PATTHES, Chief Judge.
 
 
 1
 Appellants include both school children who attend nonpublic schools in the State of Missouri and their parents. The latter sue in their own behalf and also as next friends of the children. They commenced this action April 6, 1970 in the United States District Court for the Western District of Missouri against Hubert Wheeler (then) Commissioner of Education of the State of Missouri and all eight members of the Missouri State Board of Education. The suit was brought individually and on behalf of all members of a class of persons throughout the state of Missouri who are educationally deprived children attending nonpublic schools in the state. Appellees were sued both as individuals and in their official capacities.
 
 
 2
 In the complaint filed in the district court, appellants alleged that they had been, and were being, deprived of benefits due them under Title I of the Elementary and Secondary Education Act of 1965, 20 U.S.C. 241a-241m, 242-244 (hereinafter the Act), and the Regulations promulgated thereunder. They asserted that appellees' refusal to channel federal funds received under Title I of the Act to nonpublic Missouri schools denied them their constitutional rights under the First and Fourteenth Amendments; that appellees acted under color of state law and that their actions were in violation of the provisions of the Civil Rights Act of 1964, 42 U.S.C. 1983. The jurisdiction of the district court was invoked under 28 U.S.C. 1343(3).
 
 
 3
 On the basis of these contentions, appellants sought, inter alia, declaratory relief establishing their right to receive the fair benefits of the Act, an injunction restraining appellees from continued violations of the Act, and an order directing appellees to render an accounting of the funds received and expended from 1966 through 1969. They also requested that approximately $13,000,000 alleged to have been wrongfully denied them since the operation of the Act in 1966, be awarded to a court-appointed trustee who would be charged with the administration and distribution of this amount for the benefit of deprived children enrolled in nonpublic schools in Missouri.
 
 
 4
 On August 31, 1970, following certain pretrial procedures, but prior to a hearing on or consideration of the claim for relief, the district court, on motion of appellees, dismissed the action without prejudice. The dismissal was predicated on two grounds: (1) that appellants had failed to exhaust administrative remedies, and (2) that the federal court should abstain from exercising jurisdiction over the case because it involved unsettled questions of state law which should initially be decided in the state courts. Appellants have appealed from the order of dismissal, contending that the district court was in error on both grounds.
 
 
 5
 It appears that this is a case of first impression presenting novel and unsettled questions of the interpretation and application of Title I of the Act and the remedies thereunder. We decided, therefore, after the appeal was submitted, to invite the United States Commissioner of Education to file an amicus curiae brief. He accepted the invitation and has filed an objective and informative brief. Only appellees have filed a brief in response.
 
 
 6
 Before reaching the specific issues presented by this appeal, we think it appropriate and beneficial to briefly review the purpose and operation of Title I of the Act. Congressional intent in enacting Title I was to grant financial assistance to local educational agencies to enable them to provide special services to meet the particular needs of educationally deprived children in school attendance areas having high concentrations of children from law income families. See 20 U.S.C. 241a, 'Congressional declaration of policy.' The maximum grant which a local educational agency is eligible to receive for a fiscal year is governed by a statutory formula. See 20 U.S.C. 241c(a)(2). To receive benefits under Title I, the local educational agency must apply to its state educational agency, delineating the programs and projects in which it intends to use the funds. The state agency may then approve or disapprove the application subject to the criteria set forth in the statute and regulations. 20 U.S.C. 241e; 45 C.F.R. 116.34.
 
 
 7
 In order to participate in the program the state educational agency must submit an application to the United States Commissioner of Education, providing satisfactory assurance that it will approve only those applications from the local agencies which comply with the requirements of Title I.[1] The application also must contain assurances that the state agency will require each local educational agency to perform the obligations assumed by it in its approved applications for grants; that it will adopt fiscal control and fund accounting procedures which will assure the proper handling of the moneys paid to the state; that it will make periodic reports to the Commissioner evaluating the effectiveness of projects utilizing Title I funds; and that it will make such other reports as the Commissioner may require including 'a disclosure of any allegations of substance which may be made by local educational agencies or private individuals or organizations of actions by State or local educational agencies contrary to the provisions of Title I of the Act or the regulations * * *.' 45 C.F.R. 116.31(g).
 
 
 8
 The United States Commissioner of Education is charged with the administration of the Act and is authorized to make such regulations as he finds necessary to carry out its provisions. 20 U.S.C. 242(b). However, in the administration of the program, the Commissioner deals with the state educational agencies rather than with the local agencies and their student populations. Where the Commissioner finds that there has been a failure to comply substantially with the assurances given by the state educational agency as required in order to participate in the benefits, the Commissioner has the duty and authority, after taking the proper statutory procedures, to withhold the funds from the state educational agency. 20 U.S.C. 242j. If the state is dissatisfied with the Commissioner's action in withholding funds for noncompliance or with the Commissioner's initial decision in disapproving a state educational agency's application for participation in the program, judicial review of the Commissioner's determination if afforded the state under 20 U.S.C. 241k.
 
 
 9
 With these considerations in mind, we turn to the specific issues before us.
 
 
 10
 The district court ruled, and appellees contend, that the dismissal of the action was required, because appellants failed to exhaust administrative remedies. However, in this connection appellees concede that it is not necessary for appellants to exhaust the administrative remedies, if any, afforded by the State of Missouri.
 
 
 11
 Rather, the question is whether appellants must exhaust administrative remedies in the United States Office of Education[2] befoer their claim is ripe for adjudication in the federal courts. Appellants vigorously contend that they are not required to exhaust administrative remedies, because neither the Act itself, nor the Regulations promulgated thereunder, provide for any such remedies.
 
 
 12
 An examination of the Act reveals that the only remedy for noncompliance with the requirements of Title I is the withholding of funds from the state agencies as provided for in 20 U.S.C. 241j. Ancillary to his responsibility under this section, the Commissioner has promulgated several regulations relating to the procedure to be followed when such action in contemplated. Section 116.52(a), Title 45, C.F.R., restates the provisions of 241j. Section 116.52(b) provides:
 
 
 13
 '(b) Prior to initiating a hearing under this section, the Commissioner will attempt to resolve any apparent differences between him and the State educational agency regarding the interpretation or application of the provisions of Title I of the Act and the regulations in this part, including any apparent differences with respect to the disposition of matters reported by the State educational agency pursuant to 116.31(g). Nothing herein shall be deemed to prevent any State educational agency from seeking the advice of the Commissioner prior to disposing of such matters.'
 
 
 14
 Section 116.31(g), Title 45, C.F.R., further provides:
 
 
 15
 '(g) Each application by a State educational agency shall contain an assurance that it will make such other reports to the Commissioner as he may reasonably require from time to time to enable him to perform his duties under Title I of the Act. Such reports shall include a disclosure of any allegations of substance which may be made by local educational agencies or private individuals or organizations of actions by State or local educational agencies contrary to the provisions of Title I of the Act or the regulations in this part, a summary of the result of any investigations made or hearings held with respect to those allegations, and a statement of the disposition by the State educational agency of those allegations. It is recognized that the responsibility with respect to the resolution of such matters rests, in the first instance, in the State educational agency.'
 
 
 16
 While 116.31(g) evidences an anticipation of complaints by private individuals, neither it nor any other regulation or provision of the Act establishes any administrative procedure for the filing or processing of complaints by the intended individual beneficiaries of Title I programs. In his brief, the Commissioner explains that Title I does not require a complaint by one served under the Act as a prerequisite to the initiation of compliance proceedings under 20 U.S.C. 241j. He further states:
 
 
 17
 'The purpose of 116.31(g) of the Regulations is to bring to the Commissioner's attention information indicative of probable noncompliance with assurances so that he may determine whether to institute administrative proceedings against the State. * * * There is, however, no procedure for the adjudication of such complaints or application of any particular remedy designed to satisfy any particular complainants.'
 
 
 18
 P. 9 Commissioner's brief.
 
 
 19
 This is not to imply that complaints by private individuals receive no attention by the Office of Education. As indicated by both the Commissioner and the supplementary materials submitted by appellees as a part of their response to the amicus brief, such a complaint may stimulate investigatory procedures and ultimate enforcement action by the withholding of Title I funds from the state agencies. However, the Commissioner states that 'it should be noted that in this situation the complaint serves as a source of information and not as a triggering device for the initiation of administrative action.' Note 14, p. 10 Commissioner's brief. In summary, the Act and Regulations do not provide for any methods by which a private individual may present a claim and obtain relief or even file a complaint and be assured that investigative and corrective action will be taken. Succinctly stated, there are no prescribed or authorized administrative remedies to exhaust.
 
 
 20
 The Supreme Court was confronted with a nearly identical situation in Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970), an action by welfare recipients which challenged the validity of a provision of the Yew York Social Services Law which altered the schedule of Aid to Families with Dependent Children payments. It was contended that the New York law was in conflict with the Federal Social Security Act. As in the case before us, the defendants claimed that the federal district court should have declined to exercise jurisdiction over the matter because the welfare recipients had failed to exhaust administrative remedies in the United States Department of Health, Education and Welfare.[3]
 
 
 21
 In many ways, the AFDC program under consideration in Rosado parallels the funding program of Title I of the Elementary and Secondary Education Act of 1965. States which desire to receive federal funds for AFDC programs must submit a plan to the Secretary of HEW for approval. See 42 U.S.C. 601, 602. If federal requirements are not complied with subsequent to the approval of a state's plan, the Secretary must partially or totally cut off federal funds to the state. 42 U.S.C. 604(a). The preenforcement noncompliance sanctions under Title I have a counterpart in the Social Security Act, in that the Secretary of HEW must afford a state certain administrative procedures prior to the withdrawal of funds for AFDC benefits. 42 U.S.C. 1316. However, as with Title I, there are no administrative mechanisms by which the individual welfare recipients may obtain relief and no procedures whereby they may trigger or participate in HEW's review of state welfare programs. In this context, the Supreme Court found that 'neither the principle of 'exhaustion of administrative remedies' nor the doctrine of 'primary jurisdiction' has any application to the situation before us.' Rosado v. Wyman, supra, at 406, 90 S.Ct. at 1215. The Court further held that it was immaterial whether HEW could provide administrative procedures by which the individuals could obtain relief, concluding 'it has not done so, which means there is no basis for the refusal of federal courts to adjudicate the merits of these claims.' Id. at 406, n. 8, 90 S.Ct. at 1214.
 
 
 22
 Thus, we reach the conclusion that the holding in Rosado is dispositive of the administrative remedies issue now before us. Exhaustion of administrative remedies is not a prerequisite to adjudication of a claim in the courts, where there are no prescribed agency procedures or remedies to exhaust. Cf. McNeese v. Board of Education, 373 U.S. 668, 674-676, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); Levers v. Anderson, 326 U.S. 219, 223-224, 66 S.Ct. 72, 90 L.Ed. 26 (1945); United States Alkali Export Assn., Inc. v. United States, 325 U.S. 196, 210, 65 S.Ct. 1120, 89 L.Ed. 1554 (1945).
 
 
 23
 As shown at the outset, the district court invoked the abstention doctrine as an alternative ground for the dismissal, holding that the federal courts should abstain from exercising jurisdiction over the subject matter, because it involves unsettled questions of state law which should be decided initially in the Missouri courts. In so holding, the district court relied solely upon Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970). Appellants contend, and we agree, that Reetz is inapposite and that the district court was in error in relying upon the abstention doctrine.
 
 
 24
 Reetz involved an application by nonresidents of Alaska for a commercial salmon net gear lecense in that state. Invoking the Equal Protecting Clause of the Fourteenth Amendment, they challenged the constitutionality of an Alaska statute and regulations enacted pursuant thereto, which limited commercial salmon fishing licenses to defined groups of persons. It was also alleged that the statute and regulations in question deprived them of their rights under the Alaska Constitution. The provisions of the state constitution at issue had never been interpreted by an Alaska court. The Supreme Court held that the threejudge court, which had proceeded to the merits and found the Alaska statute and regulation to be unconstitutional both under the Equal Protection Clause and the Constitution of Alaska, should have abstained from exercising jurisdiction over the matter while the parties repaired to the Alaska courts for a resolution of their state constitutional question.
 
 
 25
 The holding was premised upon the Court's finding that '* * * the nub of the whole controversy may be the state constitution.' Reetz v. Bozanich, supra, at 87, 90 S.Ct. at 790. The Court also found the case to be on all fours with City of Meridian v. Southern Bell Tel. & Tel. Co., 358 U.S. 639, 79 S.Ct. 455, 3 L.Ed.2d 562 (1959) and reaffirmed the holding of that case:
 
 
 26
 'Proper exercise of federal jurisdiction requires that controversies involving unsettled questions of state law be decided in the state tribunals preliminary to a federal court's consideration of the underlying federal constitutional questions . * * * That is especially desirable where the questions of state law are enmeshed with federal questions. * * * Here, the state law problems are delicate ones, the resolution of which is not without substantial difficulty-- certainly for a federal court. * * * In such a case, when the state court's interpretation of the statute or evaluation of its validity under the state constitution may obviate any need to consider its validity under the Federal Constitution, the federal court should hold its hand, lest it render a constitutional decision unnecessarily.' Id., at 640-641, 79 S.Ct. Id., at 640-641, 79 S.Ct.
 
 
 27
 In the case before us, the 'nub of the controversy' centers on an interpretation of a federal statute. Appellants assert that they are being deprived of federal funds to which they are entitled under a federal law. While there may be an unsettled question as to whether state law allows appellees to disburse funds for the purposes which appellants urge,[4] a definitive ruling on state law questions would neither control the outcome of the litigation nor obviate the need to adjudicate the issues presented regarding the requirements of the Elementary and Secondary Education Act of 1965 and the constitutionality of appellees' actions in the manner in which they acquire and distribute Title I funds. As distinguished from Reetz, supra, the controversy turns on an interpretation of Title I of the Act, the factual issue of whether appellees are acting in compliance with the federal law, and perhaps ultimately, as appellees contended in the district court, the constitutionality of the Act itself.
 
 
 28
 Threading itself throughout appellees' briefs is the theme that a reversal of the judgment of dismissal will result in a flooding of the federal courts with suits by parents of underprivileged children who may be disillusioned as to the benefits available under the Act. Although this argument is not bare of logic, it hardly constitutes a legal basis for cutting off redress to the courts to qualifying children where no other effective remedy is available. We suspect the Congress, by amendment to the Act, or the Secretary of HEW, by appropriate regulation, could prescribe meaningful administrative procedures for aggrieved persons. That has not been done, and we must dispose of the case in light of the present posture of the law.
 
 
 29
 In summary, we conclude a reversal ana remand is necessary. Needless to say, we indicate no opinion on the merits of the alleged noncompliance by the state officials. We go no further than to hold the court fell into error in dismissing for failure of appellants to exhaust administrative remedies or alternatively to adjudicate their claim in the state courts.
 
 
 30
 On remand, the district court may be disposed in invite the Commissioner of Education to present his views in an amicus brief or otherwise.
 
 
 31
 Reversed and remanded.
 
 
 
 *
 The Honorable Tom C. Clark, Retired Associate Justice of the United States Supreme Court, sitting by special designation
 
 
 [1]
 The determinations required to be made by the state educational agency before it may approve applications of local educational agencies are set out in 20 U.S.C. 241e(a). One of these determinations is:
 '(2) that, to the extent consistent with the number of educationally deprived children in the school district of the local educational agency who are unrolled in private elementary and secondary schools, such agency has made provision for including special educational services and arrangements (such as dual enrollment, educational radio and television, and mobile educational services and equipment) in which such children can participate; * * *.'
 20 U.S.C. 241e(a)(2).
 
 
 [2]
 The Office of Education is a bureau within the Department of Health, Education and Welfare. The Office is charged with the promotion of the cause of education throughout the United States. Its purposes and duties include the collection of statistics and facts showing the conditions and progress of education and the diffusion of information which is of aid in the establishment and maintenance of efficient school systems. 20 U.S.C. 1. The management of the Office of Education is entrusted to the Commissioner of Education, subject to the direction and supervision of the Secretary of Health, Education and Welfare, 20 U.S.C. 2
 
 
 [3]
 Appellees argue that Rosado is distinguishable from the case before us. Although there are distinguishing features, we do not perceive any substantial or decisive difference in the principle involved, certainly not as to the question of exhaustion of administrative remedies
 
 
 [4]
 The Attorney General of Missouri in Opinion No. 26, dated January 29, 1970, has taken the position that:
 'The Elementary and Secondary Education Act of 1965 provides that, under certain circumstances and to the extent necessary, public school personnel, paid with federal funds pursuant to this program, may be made available on the premises of private schools to provide certain special services to eligible children and that Missouri law would not prevent public school personnel, paid with federal funds, from providing these services on the premises of a private school.'
 We are informed by brief of appellees that the present suit and an identical claim in the parallel suit of Brusca v. States of Missouri ex rel. State Board of Education (No. 69 C 404(3)), now pending before a three-judge district court in the Eastern District of Missouri are being defended by special counsel rather than the State Attorney General, who withdrew from the defense of Brusca, because the plaintiffs there, as here, base their claim on the position promulgated in his opinion.