Francis J. Bloustein, J.
This is an action brought by the City of Rye and the Non-Partisan Civic Association, Inc., a nonprofit organization in the Town of Oyster Bay, against the Metropolitan Transportation Authority and its Chairman, for a declaratory judgment declaring* that paragraph (a) of subdivision 9 of section 1266 of the Public Authorities Law (added by L. 1967, ch. 717, § 92), which authorized the defendant Authority to construct a bridge across Long Island Sound in the vicinities of Rye and Oyster Bay, was effectively repealed by the 1971 Legislature by a bill (Assembly No. 945), which was passed by the Legislature but did not receive executive approval and was in fact vetoed by the Governor. The amended complaint also seeks to enjoin the defendants from taking any further steps or spending any State money to construct or prepare to construct the contemplated bridge.
Defendants have moved to dismiss the amended complaint on the ground that it fails to state a cause of action, and have also urged that plaintiffs have no standing to sue and that no justiciable controversy is presented. In support of their motion, defendants have submitted various documents, including certified copies of pertinent entries in the official Assembly Journal as well as other papers, and opposing affidavits have also been submitted by plaintiffs, and the court has considered the evidence presented by both sides, treating the motion as one for summary judgment in accordance with CPLR 3211 (subd. [c]). (See Kronish, Lieb v. Reynolds, Inc., 33 A D 2d 366, 367-368 [1st Dept.].)
It appears that the bill, which plaintiffs claim became law without the Governor’s approval, originated in the Assembly as No. 945 and was passed by that body on April 21,1971, by more than a two-thirds majority. It was thereafter also passed by the Senate either on the same day or the next day, and the Clerk of the Assembly was directed to deliver the bill to the Governor. The bill was, however, not actually physically presented to the Governor until more than a month later, on May 24,1971.
The entries in the Assembly Journal show that on June 3, 1971 a motion to recall the bill from the Governor for the purpose of amendment was adopted by both houses of the Legislature and that the bill was returned by the Governor to the Assembly on June 4,1971. The entries in the Assembly Journal further show that thereafter, on the same day, June 4, 1971, by action of both *974 houses, the bill was ordered redelivered to the Governor for action by him and it was so redelivered the same day. The bill was thereupon disapproved by the Governor with a veto message dated June 4, 1971, and the bill was returned to the Assembly with the veto message either on that day or the following day. The amended complaint further alleges that thereafter, on June 6, 1971, shortly prior to the adjournment of the Legislature, a motion to override the Governor’s veto was submitted to the Assembly but failed to pass because it did not receive the required vote of two thirds of all the members elected to the Assembly.
Section 7 of article IV of the New York State Constitution provides in pertinent part as follows: ‘ ‘ Every bill which shall have passed the senate and assembly .shall, before it becomes a law, be presented to the governor; if he approve, he shall sign it; but if not, he shall return it with his objections to the house in which it shall have originated, which shall enter the objections .at large on the journal, and proceed to reconsider it. If after such reconsideration, two-thirds of the members elected to that house shall agree to pass the bill, it shall be sent together with the objections, to the other house, by which it shall likewise be reconsidered; and if approved by two-thirds of the members elected to that house, it shall become a law notwithstanding the objections of the governor. * * * If any bill shall not be returned by the governor within ten days (Sundays excepted) after it shall have been presented to him, the same shall be a law in like manner as if he had signed it, unless the legislature shall, by their adjournment, prevent its return, in which case it shall not become a law without the approval of the governor.”
The amended complaint contains three causes of action. The first cause of action proceeds on the theory that the 10-day period, allowed to the Governor within which to approve or disapprove a bill passed while the Legislature is still in session, commenced to run, not on May 24, 1971, when the bill was first physically delivered to the Governor, but rather on April 22, 1971. That theory is predicated on allegations in the .amended complaint, ‘1 on information and belief ’ ’, that ‘£ employees of the State Legislature, acting as agents of and at the instruction of the Governor, refrained from physically delivering” the bill to the Governor for more than a month after its passage, and that the Governor £ £ was made aware ’ ’ of the passage of the bill and “knew of its contents” no later than April 22, 1971. The purpose of the delay, it is charged, was to defer delivery of the bill to the Governor until *975 the adjournment of the Legislature or shortly prior thereto so as to deprive the Legislature of an opportunity to override any veto.
The second cause of action alleges that the entries in the Assembly Journal with respect to the recall of the bill are inaccurate, since no motion was made to recall the bill either by the sponsor who had introduced the bill and who was the only person authorized under Assembly rules to make a motion to recall it, or by anyone authorized by him to do so, or in fact by anyone at all. It is further alleged that, though the Governor’s veto message was dated June 4, 1971, within a period of 10 days from the initial physical delivery of the bill to him on May 24, 1971, it was not returned to the Assembly with his objections, as required by the above-quoted constitutional provisions, until thereafter, beyond the 10-day period, and that -since no effect could be given to the purported recall, the bill became law without the Governor’s signature on June 5, 1971.
The third cause of action proceeds on the theory that the bill, in any event, became law without the Governor’s approval because, as plaintiffs claim, the Legislature was deprived of an adequate opportunity to override the Governor’s veto by reason of delay in submitting the vetoed bill for reconsideration by the Legislature until the night of June 6, 1971, the scheduled adjournment date of the Assembly, and by reason of various alleged irregularities in connection with the resubmission of the bill to the members of the Assembly.
The first cause of action must be regarded as insufficient as a matter of law, since the facts alleged therein, even if accepted at face value, would not entitle plaintiffs to a declaration, as sought by them, that the bill thereby became law without the Governor’s approval prior to its actual delivery to him for executive action.
The State Constitution (art. IV, § 7, quoted above) distinctly provides that no bill passed by the Legislature can become law without the approval of the Governor except where it is not returned by him with his objections “within ten days (Sundays excepted) after it shall have been presented to him ” (italics supplied), and the Legislature has not previously adjourned. Plaintiffs are in effect asking the court to rewrite the pertinent constitutional provisions by reading into them a further implied exception that even though the particular bill has not been actually physically “presented” to the Governor for his action, a constructive “presentation” shall be deemed to have been made to him if delivery of the *976 bill to him has been delayed at his request. The result would be to introduce a large measure of uncertainty and confusion into the law, and this court can find no basis or warrant for going beyond the actual wording of the constitutional limitations, which are obviously designed to provide a clear and definite yardstick for determining when a bill can become law without executive approval.
The further suggestion that a bill passed by the Legislature should be deemed to have been “presented” to the Governor when the Governor is “made aware” thereof, is also completely untenable. Plaintiffs’ contention that the repealer (Assembly No. 945) was “presented” to the Governor notwithstanding* the fact that physical presentation was not made is without merit and cannot be accepted. The utter indefiniteness of any such criterion could result only in hopeless confusion. To accept plaintiffs’ views in this regard would lead to great mischief and disorder. The Legislature has ample means available to it, by control of its personnel and procedures, to insure that bills on which legislative action has been completed shall be promptly presented to the Governor, and there is no cause for judicial revision of the clear provisions of the 'Constitution for the alleged purpose of insuring -such prompt presentation.
The second cause of action raises the question whether the entries in the official Assembly Journal can be collaterally impeached by parol evidence. There can be no question that if effect is given to those entries in this case, the Governor’s veto of the bill must be held to have been timely. If there had been no recall, the pertinent 10-day period for executive action would have expired on June 4, 1971 and the bill would have become law without the Governor’s signature if he had not returned it with his objections to the Assembly on that day. However, if the bill was actually recalled by the Legislature for purposes of amendment, as reflected by the entries in the Assembly Journal, a new 10-day period would necessarily have started to run again upon the subsequent redelivery of the bill to the Governor.
Plaintiffs dispute the accuracy of the Assembly Journal entries. However, the State Constitution (art. III, § 10) specifically requires each house of the Legislature to ‘ ‘ keep a journal of its proceedings ” (see People ex rel. Hatch v. Reardon, 184 N. Y. 431, 442), and there is cogent authority that in view of the official status accorded to such journals, parol evidence may not be received to impeach the accuracy of the entries therein.
*977 While the Court of Appeals of this State has apparently not passed on this question, the rule against such collateral impeachment has been enunciated by the Appellate Division of this Department (see People ex rel. Durham Realty Corp. v. La Fetra, 195 App. Div. 280, 286, affd. 230 N. Y. 429; see, also, Loos v. City of New York, 257 App. Div. 219, 223 [2d Dept.]), and has also been regarded as settled law by Professor Wigmore (see 4 Wigmore, Evidence [3d ed.], § 1350, p. 684). Indeed, that is the rule which is supported by the weight of authority in other jurisdictions (see, e.g., Sangamon County Fair v. Stanard, 9 Ill. 2d 267; Opinion of the Justices, 102 N. H. 230; Standard Oil Co. v. State Bd. of Equalisation, 110 Mont. 5; Integration of Bar Case, 244 Wis. 8; see, also, 82 C. J. S., Statutes, § 87, pp. 144-146; 50 Am. Jur., Statutes, § 141, p. 125), at least where there is no patent ambiguity in the journal entries (State ex rel. Armbrecht v. Thornburg, 137 W. Va. 60). It has been observed that that rule serves the dual purpose of assuring greater certainty in the field of legislative law, and of avoiding undue interference by the judiciary with a co-ordinate branch of government. (See State ex rel. Cline v. Schricker, 228 Ind. 41; see, also, Loos v. City of New York, 257 App. Div. 219, 223, supra.) Thus the legislative journals in an action where a legislative enactment is collaterally attacked are binding on the court, and judicial revision is not warranted.
In the light of this state of the authorities, the court declines to follow the contrary view expressed in Franklin Nat. Bank v. Clark (26 Misc 2d 724, 728, 745). The actual decision in that case may in any event be distinguishable because of certain ambiguities emphasized by the court (pp. 743-745, 747-748), which were presented by the journal entries there involved. (Cf. State ex rel. Armbrecht v. Thornburg, 137 W. Va. 60, supra.)
Actually, if there was any impropriety in connection with the recall of the bill, as alleged in the amended complaint, the remedy lay with the legislative body where the bill originated to correct the situation. This could have been done quite simply. The sponsor of the bill could thus have secured appropriate action by the Assembly, by resolution or otherwise, to correct the entries in the Assembly Journal so as to reflect what plaintiffs claim were the true facts. However, absent such correction by appropriate action of the Assembly, the entries in the Assembly Journal must be accepted as they stand.
*978 Those entries clearly show that the bill was recalled by the Legislature on June 3, 1971, that it was not redelivered to the Governor thereafter until June 4, 1971, and that the Governor thereafter returned the bill to the Assembly with his veto message well within the period of 10 days which started to run anew from the date of the recall. Since those entries must here be given conclusive effect, the Governor’s veto of the bill must necessarily be held to have been timely, since it was properly exercised.
Nor is there any basis or warrant for denying effect to the Governor’s timely veto because of the alleged irregularities and violations of Assembly rules complained of in the third cause of action, which plaintiffs claim operated to deprive the Assembly of an adequate opportunity to override the veto. It is a matter of sheer conjecture whether the sponsor of the bill or its supporters would have been able to garner the two-thirds vote needed to override the veto if the circumstances complained of had not occurred. Further, at least where no constitutional or statutory mandate is involved, “it is not the province of the courts to direct the legislature how to do its work”. (See People ex rel. Hatch v. Reardon, 184 N. Y. 431, 442.)
In short, plaintiffs’ claim that the bill (Assembly No. 945) which proposed to repeal paragraph (a) of subdivision 9 of section 1266 of the Public Authorities Law, became law without the Governor’s approval and despite his veto, is legally untenable, and all three of the causes of action in the amended complaint must be rejected for the reasons set forth above. It is accordingly unnecessary to pass on the other objections advanced by defendants.
It may be noted that the sponsors of the bill here involved will have a further opportunity to press for such repealing legislation at the next session of the Legislature and to attempt to secure the requisite votes at that session to override any veto by the Governor. No budgetary appropriation has apparently yet been made for the actual construction of the contemplated bridge, nor is there any indication that the agencies charged with the implementation of the enabling legislation are ready to proceed with the acquisition of the necessary land, with the planning of access roads for the bridge, or with the design and construction of the bridge.
Defendants’ motion; which, as noted, the court is treating as one for summary judgment dismissing the amended complaint, is granted.