**UNITED STATES of America, Plaintiff,**

v.

**Louis M. RAY, Acme General Contractors, Inc., a Florida corporation, and J. H. Coppedge Company, a Florida corporation, Defendants.**

No. 65–271–Civ.

United States District Court
S. D. Florida.
April 21, 1965.

Aaron A. Foosaner, Asst. U. S. Atty., for plaintiff.

Charles E. Davis, Orlando, Fla., for defendants.

## MEMORANDUM OPINION

FULTON, Chief Judge.

This cause came on to be heard upon the motion of the Government for a preliminary injunction. The Court heard the testimony of the parties and has received and examined certain exhibits and has heard argument of counsel. Thereupon, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

On November 16, 1964 the defendant, Acme General Contractors, Inc., through its president, Louis M. Ray, filed an application with the Corps of Engineers for a permit to dredge and bulkhead in the waters over and around Triumph Reef. This reef is located slightly more than three miles east of the southeast coast of Florida and forms part of the reef area which lies easterly of and parallel to the Florida Keys, and is upon the outer continental shelf. More specifically, this reef is approximately fifteen miles south and east of the densely populated area of Dade County, Florida, and almost due east of the City of Homestead, Florida. Triumph Reef is in the vicinity of latitude 25° 29′ 27″ north, longitude 80° 06′ 40″ west.

An inspection of said application will reveal that the Acme corporation and its president Ray, both defendants herein, intended to dredge the area around said reef to an extent necessary to create a man-made island over said reef, with an area of twenty acres and to an elevation of twelve feet, and that their ultimate purpose was to develop a resort area thereon.

However, at the hearing upon this application Mr. Ray testified that his intention was to construct and operate a ships' servicing store upon the dredged area. He testified that he and his corporation had already dredged and filled three small circular areas, each of which was between forty and fifty feet in diameter, and two of which were dredged over and upon Triumph Reef, and the other of which was dredged over and upon Long Reef, which is immediately south of and in close proximity to Triumph Reef. Long Reef is located approximately in the vicinity of latitude 25° 25.6″ north and longitude 80° 7.6″ west. Mr. Ray testified that he had no present intention of doing more than shoring these small island formations to protect them from storms and to improve them and use them for said ships' servicing area. Mr. Ray made no reference to the request which was made in said application for permission to create a twenty-acre island for resort purposes. For reasons which are glaringly obvious, Mr. Ray's testimony leaves much to be desired with respect to candor and forthrightness.

The testimony shows that in due course Mr. McKnight, who is the operations officer in the office of the Corps of Engineers in Jacksonville, Florida, notified and advised Mr. Ray that his corporation's application for the permit to dredge and develop Triumph Reef had been denied by the Corps. Despite this denial, duly communicated by McKnight to Ray,

and in apparent defiance of it, Ray and his corporation rented a barge from the defendant, J. H. Coppedge Company; and with the use of this barge the defendants proceeded to dredge and fill the three circular island formations on said reefs.

The dredging and filling operations by these defendants involved the dredging and depositing of the subsoil and seabed, including the live and dead coral formations thereof, in such manner as to deposit said material into three fifty-foot caissons, two of which caissons were located by the defendants upon Triumph Reef and the other of which was located by them on Long Reef, as aforesaid.

The coral area on and around Triumph and Long Reefs is unique and rare in this part of the world. This entire coral reef is a sensitive living thing which has taken nature, through its patience and exquisite care, countless centuries to develop. This entire reef formation stands as a sentry against the sea and protects the grass beds where many varieties of fish feed. By day the fish live on the reef, in the caves and on the shelves thereof, and in this fashion the reef protects the marine life and provides its food. Stated differently, the evidence in this case shows that these two reefs and the reef formation of which they are a part is a natural wonderland, which serves as a breeding and feeding area and as a shelter for countless species of fish and other sea life which are found only in that area.

The evidence shows that this reef area is heavily fished by both commercial and sports fishermen; that the area over and around these two reefs is extensively navigated by both commercial and pleasure craft; that this area has been one of research by countless marine biologists; that the area is in close proximity to the John Pennekamp and Key Largo Coral Reef Fish and Game Preserve, which have been designated as a national park, and that at the present time a plan is nearly completed to designate and constitute these two reefs and the reef areas around them as a national monument.

The dredging and filling operations by the defendant already accomplished, and the further operations which are contemplated and which are obviously necessary for the purposes of the defendants, have and will result in the destruction of the living coral reef of the area and thereby has and will be destructive of the marine life which abounds there. More importantly, the damage already done, and that which is in prospect, is irreparable, and in the opinion of this Court sufficiently extensive to require the injunctive relief herein granted.

This reef is obviously vital to the game and commercial fishing industry of this area and to the tourism of the area, and the dredging and filling activities complained of have and will destroy what this Court regards to be a priceless natural resource.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the parties to, and the subject matter of, this cause. 43 U.S.C. Section 1333(b).

2. The subsoil and seabed of the outer continental shelf adjacent to the coast of the United States appertains to the United States, and are subject to its jurisdiction, control, and power of disposition. 43 U.S.C. Section 1332.

3. The authority of the Secretary of the Army to prevent obstruction to navigation in the navigable waters of the United States under 33 U.S.C. Section 403, is extended to artificial islands and fixed structures that may be erected on the outer continental shelf. 43 U.S.C. Section 1333(f).

4. The irreparable damage to the area, and the defiance by the defendants of the exercised authority of the Corps of Engineers justifies the issuance of a preliminary injunction.

Thereupon, it is

Ordered and adjudged that the defendants Louis M. Ray, Acme General Contractors, Inc., and J. H. Coppedge Com-

pany, its agents, servants and employees, be, and are hereby enjoined from engaging in any dredging, filling, and any other similar activity on and around Triumph Reef, which is located at approximately latitude 25° 29′ 27″ north, longitude 80° 06′ 40″ west, and on and around Long Reef, which is located at approximately latitude 25° 26.8′ north, longitude 80° 07.3′ west, until further order of this Court.