Jay B. COOPER, General Manager Belco Limited d/b/a Banyan Bay Club Apartments, Plaintiff,

v.

Donald A. WISDOM, Colonel, U.S. Army Corps of Engineers, District Engineer, Department of the Army, Jacksonville, Florida District, Clifford L. Alexander, Jr., Secretary of the Army, the United States of America, Defendants.

No. 77–4700–Civ–JLK.

United States District Court,
S. D. Florida.

Oct. 21, 1977.

---

E. W. Frank, Miami, Fla., for plaintiff.

Mary-Ella Johnson, Asst. U. S. Atty., Miami, Fla., for defendants.

## ORDER GRANTING PERMANENT INJUNCTION

JAMES LAWRENCE KING, District Judge.

This cause came on for hearing on October 18, 1977, on plaintiff's motion for a temporary order restraining construction under U.S. Corps of Army Engineers Permit No. 77J0248. The court, after considering the pleadings, oral argument, and admissions of fact by counsel, advanced and consolidated the trial of the action on the merits with the hearing of the application for temporary restraining order pursuant to Fed.R.Civ.P. 65(a)(2).

During oral argument, the parties agreed and the government stipulated that the following are the facts which govern this case:

1. On March 23, 1977 the Army Corps of Engineers issued a public notice for an application to dredge and fill Biscayne Bay to construct a boat ramp at the Legion Memorial Park at N.E. 64th Street.

2. On April 20, 1977 the plaintiff notified the Corps of Engineers in writing of a

strong opposition to the application and formally requested a public hearing on the application.

3. The District Engineer of the Army Corps of Engineers did not arrange a public hearing and no public hearing was held.

4. The District Engineer of the Army Corps of Engineers did not make a written determination that the issues raised were insubstantial or that there was otherwise no valid interest to be served by a public hearing. Likewise, the District Engineer did not communicate any reasons for the denial of a public hearing to the requesting parties.

Fed.R.Civ.P. 65(a)(2) authorizes this court to consolidate a preliminary injunction hearing with the trial on the merits after commencement of the hearing. Generally speaking, such a consolidation is proper where the parties are not prejudiced by lack of notice. *Eli Lilly & Co. v. Generix Drug Sales, Inc.*, 460 F.2d 1096 (5th Cir. 1972). Another factor to consider is whether the factual issues raised by the complaint and the motion for a preliminary injunction were "susceptible of complete examination upon a trial on short notice and were, in fact, examined thoroughly. . . ." *City of Rye, New York v. Schuler*, 355 F.Supp. 17, 19 (S.D.N.Y.1973). Because the government's forthright admission that there was no hearing or communication to the plaintiff is dispositive, this court concluded that consolidation was appropriate in this case. The hearing was therefore consolidated with trial on the merits, there being no further evidence which could be presented upon full notice to affect the result. Consequently, the determination to be made is whether a permanent injunction should issue.

According to the Code of Federal Regulations, the Corps of Engineers Administrative Procedure requires that a public hearing be held when it is proposed that dredged material be discharged into navigable waters and a "person or persons having interest which may be affected" requests one. 33 C.F.R. § 209.120(i)(1)(v), at 379.

The Corps argues that it interprets this duty to be discretionary; however, the language of the regulation is clearly mandatory: "the District Engineer *will arrange* a public hearing. . . ." *Id.* (emphasis added). Additionally, the Federal Water Pollution Control Act specifically states that permits for dredged or fill material may be issued only "after notice and opportunity for public hearings." 33 U.S.C. § 1344.

Alternatively, if the duty to conduct a public hearing is discretionary, the Corps of Engineers is required to notify the party requesting a hearing of its reasons for deciding not to hold one. In fact, the regulation section upon which the Corps relies states that

> [r]equests for a public hearing under this paragraph shall be granted, unless the District Engineer determines that the issues raised are insubstantial or there is otherwise no valid interest to be served by a hearing. The District Engineer *will make such a determination in writing and communicate his reasons therefore to all requesting parties.*

41 Fed.Reg. 28,952, 28,953 (1976) (emphasis added) (to be codified in 33 C.F.R. § 209.-133(e)(2)). This court has found, and the government has admitted, that neither was a public hearing held nor was the plaintiff informed in writing of the reasons therefore. Therefore, the conclusion is inescapable—whether public hearings be discretionary or mandatory—that the Corps of Engineers violated its own administrative procedure in issuing this permit.

The statutory policy supporting the holding of public hearings to explore all possible effects of a prospective permit is declared emphatically in the regulations.

> It is the policy of the Corps of Engineers to conduct the civil works program in an atmosphere of public understanding, trust, mutual cooperation, and in a manner responsive to the public interest. . . . A public meeting is a forum at which all concerned persons are given an opportunity to present additional information relevant to a proper evaluation of an application for a permit for an activity.

33 C.F.R. § 209.120(k)(1) and (2), at 384–5. Because the Corps in issuing this permit has violated its own administrative regulations and spurned the Congressional policy expressly incorporated in its source of power, this court hereby declares Permit No. 77J0248 to be invalid. It must therefore be set aside as the result of an abuse of discretion on the part of the Corps of Engineers.

■ The plaintiff's right to protective relief from the effects of an invalid permit is clear. The Federal Water Pollution Control Act, under which the Corps of Engineers must act, contemplates the protection of municipal water supplies, shellfish beds and fishery areas, wildlife, and recreation areas. Among the damages claimed by the plaintiff to be caused by the construction permit is that to the bay bottom and marine ecology, which certainly comes under the protection of the act. Additionally, the Rivers and Harbors Appropriation Act of 1899, 33 U.S.C. § 403, one of the statutes upon which the plaintiff based this court's jurisdiction, has been construed by the Fifth Circuit to commit the Corps to the prevention of unjustified ecological damage.

> The Corps bears a broad statutory obligation to carry out the Rivers and Harbors Act's permit authorization requirement for dredging and fill projects so as to advance the "preservation of our environment" by considering ecological factors.

*U. S. v. Joseph G. Moretti, Inc.*, 526 F.2d 1306, 1310 (5th Cir. 1976) (citing *Zabel v. Tabb*, 430 F.2d 199, 201 (5th Cir. 1970), *cert. denied*, 410 U.S. 910, 91 S.Ct. 873, 27 L.Ed.2d 808). In that case, the Corps of Engineers, as plaintiff, sought to prevent the dredging and filling of navigable waters in Florida Bay by a private developer who had not obtained a permit. The district court not only enjoined the developer from continuing the construction project, but also required him to restore the area which he had disrupted. The Fifth Circuit affirmed the injunction and the restoration order, citing the "extensive evidence of damaging ecological effects upon navigable waters" contained in the record. *Id.*, at 1310. (The case was remanded for an evidentiary hearing on the manner of restoration to be performed.)

The Rivers and Harbors Appropriation Act was also a springboard for the district court's holding in *U. S. v. Ray*, 281 F.Supp. 876 (S.D.Fla.1965) that damage done to a coral reef by dredging operations was irreparable. The reef was described as a priceless natural resource vital to commercial and game fishing and to tourism. Consequently, the dredging operations were enjoined.

■ While the area of Biscayne Bay which is the object of this permit is not as unique and sensitive as a coral reef, these cases serve to indicate the serious nature of the damage done to the marine environment by licensed dredging operations. Because the dredging and construction operation in Biscayne Bay is not being carried out pursuant to a valid permit, and has therefore not been evaluated according to established criteria, this court finds that it represents irreparable injury to the plaintiff and to the general public in whose interest our national waterways are maintained by the government.

■ The last factor to consider in determining whether a permanent injunction should issue is whether such relief is in the public interest. It is undeniable that the public has a strong interest not only in the preservation of the marine ecology, but also in the proper functioning of the Corps of Engineers in granting its permits. 33 C.F.R. § 209.120 sets out a list of general criteria to be considered in order to evaluate the impact of the proposed work on the public interest. These include the relative need for the proposed project, the desirability of using alternative plans, the beneficial or detrimental effects on the public and private uses of the area, and the probable impact on the area. Plaintiff argues persuasively that these criteria could not have been effectively considered without holding public hearings. Based on this analysis, the court concludes that it is in the public interest to grant a permanent injunction to prevent the continuation of this invalidly licensed dredging and construction operation. Therefore, it is

ORDERED and ADJUDGED that Permit No. 77J0248 be and the same is hereby declared to be invalid. It is further

ORDERED and ADJUDGED that the U.S. Army Corps of Engineers be and the same is hereby directed to rescind said permit and to comply with its administrative procedures in considering any new permits. It is further

ORDERED and ADJUDGED that the U.S. Army Corps of Engineers notify the permittee that its permit has been declared invalid and that all work pursuant to said permit must cease immediately. It is further

ORDERED and ADJUDGED that a permanent injunction issue prohibiting any further construction pursuant to said invalid permit. It is further

ORDERED and ADJUDGED that all parties to this action, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation shall govern themselves according to this order.